RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ABITBOL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OSCAR HEALTH, INC., <br><br> Defendant. | Case No. <br><br> COMPLAINT FOR: <br><br> 1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b) <br> 2. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(c) <br><br> Class Action <br><br> DEMAND FOR JURY TRIAL |

1

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

Plaintiff David Abitbol (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. This case involves a campaign on behalf of Oscar Health, Inc. ("Oscar Health") to market its services through the use of automated telemarketing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

3. The recipients of Oscar Health's illegal calls, which include Plaintiff and the proposed class, are entitled to damages under the TCPA and because the

technology used on behalf of Oscar Health makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

4. Plaintiff David Abitbol is a resident of this District.

5. Defendant Oscar Health, Inc. is a Delaware corporation headquartered in New York.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has specific personal jurisdiction over Oscar Health because the company provides insurance to consumers in California and this case arises from the marketing of those services to Plaintiff in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff received the telephone calls at issue in this District.

## TCPA BACKGROUND

Calls Made Using an "Automated Telephone Dialing System"

9. The TCPA regulates, among other things, the use of an automated telephone dialing system ("ATDS") to make calls. *See* 47 U.S.C. § 227, *et seq*.; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

10.     Specifically, the TCPA prohibits the use of an automated telephone dialing system to make any telemarketing call to a wireless number in the absence of an emergency or the prior express written consent of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831 (F.C.C. 2012).

11.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). An autodialer includes a device that receives a "preproduced list" of phone numbers (e.g., a list of thousands of marketing leads), and then uses a sequential or "random number generator to determine the order in which to pick phone numbers from [the] list" and then "store[s] those numbers to be dialed at a later time." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 n.7 (2021).

12.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

4

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

13. "[P]rior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

The National Do Not Call Registry

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

# FACTUAL ALLEGATIONS

17. Defendant Oscar Health is a "person" as the term is defined by 47 U.S.C. § 153(39).

18. Plaintiff Abitbol's telephone number, (818)-916-XXXX, is assigned to a cellular telephone service.

19. Plaintiff Abitbol's telephone number, (818)-916-XXXX, has been registered with the National Do Not Call Registry since February 18, 2020.

20. The Plaintiff received telemarketing calls on behalf of Oscar Health, at a minimum, on November 9 and December 29, 2020.

21. Both of these calls began with a noticeable pause before an agent joined the line.

22. Both of these calls involved a solicitation for health insurance.

23. During the November 9 call, the Plaintiff told the caller he was not interested in their services.

24. During the December 29, the Plaintiff was told that another agent would call him back with further information regarding a health insurance policy.

25. Shortly after on December 29, the Plaintiff received a call from Joaquin Loustaunau, an Oscar Health agent in California, who was promoting an Oscar Health insurance policy.

26. Mr. Loustaunau followed up the call with an email with a proposal for Oscar Health insurance.

27. Other consumers have complained about receiving robocalls from at least one of the telephone numbers used to call the Plaintiff. *E.g.,* https://www.nomorobo.com/lookup/480-717-5037 (last visited July 1, 2021).

28. Plaintiff did not provide his prior express written consent to receive the telemarketing calls at issue and did not have a prior business relationship with Oscar Health.

29. The calls were not necessitated by an emergency.

30. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.

**Oscar Health's Liability for Its Agents' Conduct**

31. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

32. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

33. In fact, the Federal Communication Commission has instructed that sellers such as Oscar Health may not avoid liability by outsourcing telemarketing to third parties, such as their agents:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

34. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for

8

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

35. Oscar Health is liable for its agents because they control the manner and means of its telemarketing methods by:

    a) acquiescing to their business mode of using a call center;

    b) advising them that they could use third parties to assist in the telemarketing;

    c) instructing them on the geographic regions they can make calls into;

    d) providing qualifications for potential clients to be sent to Oscar Health;

    e) providing them pricing and other information to supply during the calls to promote Oscar Health's insurance policies; and

    f) allowing agents to bind Oscar Health to insurance policies.

36. Oscar Health knew (or reasonably should have known) that agents like Mr. Loustaunau were violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

37. Any reasonable seller that accepts telemarketing call leads from agents engaged in telemarketing would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

38. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

40. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) an agent acting on behalf of Defendant placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using the same dialing platform used to place telephone calls to Plaintiff.
>
> **Do Not Call Class**: All persons within the United States: (1) to whose telephone number registered with the National Do Not Call Registry for at least thirty days at the time of each call (2) an agent acting on behalf of

Defendant placed more than one telemarketing call within a 12-month period (3) within the four years prior to the filing of the Complaint.

41. Plaintiff Abitbol is a member of and will fairly and adequately represent and protect the interests of this class as he has no interests that conflict with any of the class members.

42. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

43. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

44. This Class Action Complaint seeks injunctive relief and money damages.

45. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

46. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes the Classes' members number, at minimum, in the hundreds in each class.

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

47. The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.

48. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

49. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    (a) Whether the Defendant's agents used an autodialer to send telemarketing calls;

    (b) whether Defendant's agents made calls without first obtaining prior express written consent to make the calls;

    (c) whether Defendant's agents systematically made telemarketing calls to telephone numbers registered with the National Do Not Call Registry;

    (d) whether Defendant's agents' conduct constitutes a violation of the TCPA;

    (e) whether Defendant is vicariously liable for its agents conduct; and

    (f) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

50. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

51. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

52. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

53. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

54. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47U.S.C. 227(b)) on behalf of the Robocall Class**

55. Plaintiff incorporates the allegations from paragraphs 1-54 as if fully set forth herein.

56. The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Robocall Class using an autodialer.

57. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an autodialer in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

58. If the Defendant's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

59. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an autodialer in the future.

**SECOND CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. 227(b)) on behalf of the Do Not Call Class**

60. Plaintiff incorporates the allegations from paragraphs 1-54 as if fully set forth herein.

61. Defendant violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing automated calls within a 12-month period on Defendant's behalf to Plaintiff and the members of the Do Not Call Class while those persons' phone numbers were registered on the National Do Not Call Registry.

62. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Do Not Call Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff and Do Not Call Class members are also entitled to and do seek injunctive relief prohibiting the Defendant from advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendant's agents from calling cellular telephone numbers advertising their goods or services, except for emergency purposes, using an autodialer in the future;

B. Injunctive relief prohibiting Defendant's agents from calling telephone numbers registered with the National Do Not Call Registry advertising their goods or services, except for emergency purposes, in the future;

C. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

D. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: July 5, 2021

By: /s/ Rachel E. Kaufman
RACHEL E. KAUFMAN
KAUFMAN P.A.
Telephone: (305) 469-5881

COMPLAINT
*Abitbol v. Oscar Health, Inc.*

rachel@kaufmanpa.com

*Attorney for Plaintiff David Abitbol and the Proposed Classes*

COMPLAINT
*Abitbol v. Oscar Health, Inc.*